# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-1960V

* * * * * * * * * * * * * * * * * * * * * * * * *

ERIC MONTE and KIMBERLY MONTE,
*as natural parents and legal guardians of*
*D.M., a minor,*

      Petitioners,

    v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

      Respondent.

* * * * * * * * * * * * * * * * * * * * * * * * *

Chief Special Master Corcoran

Filed: March 21, 2024

*David J. Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Benjamin P. Warder*, U.S. Dep't of Justice, Washington, DC, for Respondent.

**DECISION GRANTING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS**[1]

  On October 4, 2021, Eric and Kimberly Monte filed a petition on behalf of their minor son, D.M., seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioners alleged that an influenza vaccine D.M. received on October 8, 2018, caused him to develop autoimmune encephalitis. Petition (ECF No. 1). Respondent moved to dismiss the claim on July 10, 2023. Respondent's Brief (ECF No. 27). After additional briefing, I dismissed the claim, and that determination was not appealed. Decision, dated January 5, 2024 (ECF No. 30).

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

Petitioners have now filed a motion attorney's fees and costs. Motion, dated Feb. 22, 2024 (ECF No. 34) ("Mot."). It is their sole fees request in this case. Petitioners request a total of $66,869.53 ($51,633.00 in fees, plus $14,508.78 in costs) for the work of the attorneys and paralegals at Green & Schafle. Mot. at 3. Respondent reacted to the fees request on March 7, 2024. *See* Response, dated March 7, 2024 (ECF No. 35) ("Resp."). Respondent defers to my discretion as to whether the statutory requirements for an award of attorney's fees and costs are met in this case, and if so, the calculation of the amount to be awarded. *Id.* at 2–3. Petitioners did not file a reply.

For the reasons set forth below, I hereby **GRANT IN PART** in part Petitioner's motion, awarding fees and costs in the total amount of $53,284.08.

## ANALYSIS

**I.     Petitioners' Claim had Reasonable Basis**

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited, if unreasonable, or even denied entirely.

A claim's reasonable basis[3] must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can

---

[3] Because this claim's good faith is not in dispute, I do not include a discussion of the standards applicable to that fees prong.

"lose" reasonable basis over time.

The standard for finding the existence of reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g., Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[4]

This claim was ultimately unsuccessful, and the theory presented strained against the fundamental, indisputable fact that some, or even all, of D.M.'s symptoms appeared reasonably attributable to a sports injury that looks to have been a concussion. Decision at 2, 19-21. Additionally, D.M. may have manifested conversion disorder later on – and although Petitioners made some effort to identify this as vaccine-related, those contentions were not persuasive. *Id*. at 5-6, 10-11, 20-21.

Nevertheless – and given the very low bar that applies to reasonable basis inquiries - I find the claim possessed just enough objective support to allow a fees award. The fact that D.M.'s vaccination occurred close in time to his probable concussion and manifestation of subsequent neurological issues somewhat opened the door to a theory that both could be vaccine-associated. But (and consistent with my authority to restrict, limit, or even deny fees that are not "reasonable" in *any* Vaccine Act case, successful or not) I will be reducing the award herein, as discussed in more detail below. Attorneys must take care in accepting cases that rely too heavily on a temporal nexus between injury and vaccination as suggestive of causation – and must not simply assume that as long as they can find a willing scientific expert to add heft, they will receive a full measure of their fees, no matter the claim's obvious issues. This claim was facially weak at the outset, gaining no strength as it proceeded, and therefore it is fair to question if all resources devoted to it were reasonably spent.

---

[4] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

3

**II.     Calculation of Fees**

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bass the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis*" exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioners requests the following rates for their attorneys and support staff, based on the years work was performed:

|  | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| **David Carney (Attorney)** | $325.00 | $350.00 | $375.00 | $400.00 | $425.00 | $450.00 |
| **Evan Baker (Attorney, Former Law Clerk)** | -- | -- | $150.00 | -- | -- | -- |
| **Paralegals** | $145.00 | $145.00 | $145.00 | $145.00 | -- | -- |

Final Fees Mot. at 2–3.

Mr. Carney and his colleagues practice in Philadelphia, Pennsylvania—a jurisdiction that has been deemed "in forum," and thus entitling them to rates commensurate with what was established in *McCulloch*. *See Peka v. Sec'y of Health & Hum. Servs.,* No. 20-1099V, 2023 WL 9288151 (Fed. Cl. Spec. Mstr. Dec. 20, 2023). The rates requested are also consistent with what has previously been awarded these attorneys, in accordance with the Office of Special Masters' fee schedule (recently updated for 2024 rates) and relevant decisions.[5] *See Bulman v. Sec'y of*

---

[5] OSM Attorneys' Forum Hourly Rate Fee Schedules, http://www.cofc.uscourts.gov/node/2914 (last visited March 21, 2024).

*Health & Hum. Servs.,* No. 19-1217V, 2023 WL 8230452 (Fed. Cl. Spec. Mstr. Oct. 31, 2023). I thus find no cause to reduce them in this instance.

However, given the very thin basis of the claim, the number of hours spent was unreasonable. The likelihood of concussion (coupled later with a confounding conversion disorder) as explanatory of Petitioner's symptoms was never rebutted in any persuasive manner, and addition of an expert report provided no more than a veneer of acceptability to the claim. The risk of loss in this case was not high, but highly likely – and in such circumstances counsel must keep control of time spent on the matter, independent of their otherwise-proper desire to provide representation.

Under such circumstances, I am empowered to make modest, across-the-board time reductions. ("Special masters need not engage in a line-by-line review of fees requests when making reductions, and in fact are permitted to make fair across-the-board cuts." *Humphries v. Sec'y of Health & Hum. Servs.*, No. 17-288V, 2021 WL 5444097, at *5 (Fed. Cl. Spec Mstr. Oct. 26, 2021)**.** That is proper herein. Accordingly, I hereby reduce by **twenty percent** the total recoverable fees, based on the determination that the time spent in prosecuting this matter was overall unwise. This results in a reduction of fees to be awarded by $10,326.60.[6]

### III. Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002): *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioners seek $14,508.78 in outstanding costs, including the filing fee, medical record retrieval costs, and the work of one expert, Dr. Justin Willer. Mot. at 3. Dr. Willer prepared two reports in this case. He submitted two invoices reflecting a total amount of $12,655.50 (23.01 hours of work at a rate of $550.00 per hour).[7]

---

[6] 20% of $51,633.00 is $10,326.60. Thus, the total award for attorney's fees is $41,306.40.

[7] Petitioners also obtained for D.M. a neuropsychologic evaluation and offered it as evidence (*see* Ex. 18 (ECF No. 25-1)), but do not appear to have requested reimbursement for this particular cost.

I will make no adjustments to the litigation costs requested, except for those specific to Dr. Willer. The opinion he offered was largely unhelpful, and relied on facially-unpersuasive efforts to deny the concussion as causal, or to link conversion disorder-like behaviors to vaccination. Expert input of this kind does not aid a case – and is not accepted at face value simply due to an expert's medical credentials. Under such circumstances, an expert should not receive the full amount of time billed to a matter—and for that reason, I will apply the same 20 percent reduction I am using for attorney time, reducing the amount to be awarded for Dr. Willer's work to $10,124.40 (based on a subtraction of $2,531.10).

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT** in part Petitioner's Motion for Attorney's Fees and Costs, and award a total of $53,284.08, reflecting $41,306.40 in fees, plus $11,977.68 in costs, in the form of a check made jointly payable to Petitioners and their counsel, Mr. David Carney.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[8]

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.